UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARCUS VOLLANS,

          Plaintiff,

          v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

          Defendant.

_____

Civil No.  04-823-HA

OPINION AND ORDER

David B. Lowry
9900 S.W. Greenburg Road
Columbia Business Center, Suite 235
Portland, Oregon 97223
       Attorney for Plaintiff

1 -- OPINION AND ORDER

Karin J. Immergut
United States Attorney
Craig J. Casey
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon  97204

Terrye E. Shea
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington  98104
        Attorneys for Defendant

HAGGERTY, Chief Judge:

Plaintiff brings this action pursuant to § 205(g) of the Social Security Act (SSA), as amended, 42 U.S.C. §§ 405(g), 1383(c)(3).  He seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying his applications for disability insurance benefits (DIB) under Title II and Supplemental Security Income (SSI) under Title XVI.  For the reasons provided below, the court concludes that the decision of the Commissioner must be affirmed, and this matter is dismissed.

ADMINISTRATIVE HISTORY

Plaintiff filed for DIB and SSI on June 8, 2000.  Administrative Record 653 (all remaining references to the Administrative Record will be designated by "AR" followed by the page number).  After plaintiff's claim was denied initially and upon reconsideration, he requested a hearing.  AR 35–38, 42–44, 47.  Hearings were held before an Administrative Law Judge (ALJ) on May 16, 2002 and August 15, 2002.  AR 648–95, 696–777.  The ALJ issued a written decision on August 30, 2002 finding plaintiff not disabled.  AR 21–32.  After consideration of newly submitted evidence, the Appeals Council denied plaintiff's request for review (AR 7–9),

making the ALJ's decision the final decision of the Commissioner. See 20 C.F.R. §§ 416.1481, 422.210. Plaintiff filed his Complaint seeking judicial review in this court on June 17, 2004.

STANDARDS

A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A person can be disabled only if his or her impairment is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The initial burden of proof rests upon the claimant to establish his or her disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). The Commissioner bears the burden of developing the record. 20 C.F.R. §§ 404.1512(d), 416.912(d); *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for disability benefits. 20 C.F.R. §§ 404.1520, 416.920. If a determination that the claimant is or is not disabled can be made at any step, further review is unnecessary. 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4).

Below is a summary of the five steps:

Step One. The Commissioner determines whether the claimant is engaged in substantial gainful activity. If so, the claimant is not disabled; if not, the Commissioner proceeds to step two. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Step Two.  The Commissioner determines whether the claimant has a severe mental or physical impairment.  If so, the Commissioner proceeds to step three; if not, the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

Step Three.  Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one or more of the impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1.  If so, the claimant is disabled; if not, the Commissioner proceeds to step four.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

Step Four.  The Commissioner determines whether the claimant is able to perform work that he or she has done in the past.  This requires the ALJ to examine the claimant's residual functional capacity (RFC) and the physical and mental demands of the claimant's past relevant work.  *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002).  If the claimant is able to perform past relevant work, the claimant is not disabled; if the claimant demonstrates that he or she is not able to perform past relevant work, the Commissioner proceeds to step five.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Step Five.  The Commissioner determines whether the claimant is able to do any other work.  If not, the claimant is disabled.  If the claimant is able to do other work, the Commissioner must show that a significant number of jobs in the national economy exist that the claimant can do.  *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996).

While the claimant bears the burden of proof at steps one through four, the burden shifts to the Commissioner at step five.  *Id*.  The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20

C.F.R. pt. 404, subpt. P, app. 2.  If the Commissioner demonstrates that a significant number of jobs exists in the national economy that claimant can perform, the claimant is not disabled.  If the Commissioner does not meet this burden, the claimant is disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

A claimant may not be considered disabled if drug addiction or alcoholism (DAA) is material to the claimant's disability.  42 U.S.C. § 423(d)(2)(C).  If the claimant is found disabled and medical evidence of a substance abuse disorder exists, the Commissioner must determine whether the claimant's DAA is a contributing factor material to the finding of disability.  20 C.F.R. §§ 404.1535, 416.935; *see Bustamante v. Massanari*, 262 F.3d 949, 954–55 (9th Cir. 2001).  DAA is considered material if the claimant would not be disabled if he or she stopped using alcohol or drugs.  20 C.F.R. §§ 404.1535(b), 416.935(b).  The claimant bears the burden of showing that DAA does not materially contribute to his or her disability.  *Ball v. Massanari*, 254 F.3d 817, 821 (9th Cir. 2001).

The Commissioner's decision must be affirmed if it is based on proper legal standards and its findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Andrews*, 53 F.3d at 1039.  The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision.  *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld even if "the evidence is susceptible to more than one rational interpretation."  *Andrews*, 53 F.3d at 1039–40.  However, a

decision supported by substantial evidence still must be set aside if the Commissioner did not apply the proper legal standards in weighing the evidence and making the decision. *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1998).

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was twenty-four years old at the time of the hearings. AR 25. He completed high school and one and a half years of community college. AR 656–57. Plaintiff alleges that he became disabled on October 20, 1995 due to attention deficit disorder (ADD), learning disabilities, depression, and oppositional defiance disorder. AR 101, 653–54. Plaintiff also complains of anxiety, asthma, and frequent urination. AR 27–28.

Plaintiff has had difficulty processing information and following directions from the time he was very young. AR 684. In 1991 plaintiff was diagnosed with ADD and was prescribed Ritalin. AR 431, 561. Plaintiff suffers mood swings, becoming at times withdrawn, agitated, and explosively angry. AR 685–86. Plaintiff's episodes of anger have strained his relationships with his family, friends, work colleagues and supervisors, and have occasionally led to property damage. AR 686, 703.

Plaintiff has had trouble maintaining employment. He was fired from one job when an argument about the placement of a time card escalated to conflict. AR 666. Other jobs he quit because they were "too far to drive" or because he "got kind of sick of it." AR 667, 668. He has often missed work, sometimes because he felt too depressed to go, sometimes because he preferred to spend time with his friends. AR 673, 712. Plaintiff has struggled to meet required productivity levels at work. AR 674–76.

Plaintiff also has a history of drug and alcohol use. He has used marijuana and methamphetamine. AR 677–81, 718–21. He testified that he drinks to the point of intoxication three or four times per month, although the record contains appreciable disparity on plaintiff's alcohol use. *Id*. Plaintiff acknowledges that drinking exacerbates his explosive temper. AR 451.

Plaintiff was examined by Stephen M. Huggins, Psy.D, for a consultative intellectual assessment on December 7, 2000. AR 429. Doctor Huggins' impression was major depression (mild), oppositional defiance disorder, and learning disorders. AR 434. He concluded, "Marcus does appear to have the ability to work; however, his frustration level is likely to be reached rather quickly due to some of the cognitive deficits that he seems to experience." AR 435.

A few weeks later, on January 5, 2001, plaintiff received a psychological evaluation by Steven P. Barry, Ph.D. AR 445. Doctor Barry diagnosed attention deficit hyperactivity disorder (ADHD), alcohol abuse, depressive disorder NOS, personality disorder NOS with narcissistic and antisocial features, and reading disorder. AR 452. Doctor Barry noted that plaintiff gave shifting and inconsistent accounts of his alcohol use. AR 447–48. The doctor concluded that plaintiff's combined impairments rendered him "unemployable." AR 451.

At the second hearing before the ALJ, Sally V. Clayton, Ph.D., testified as a non-examining medical expert after reviewing plaintiff's medical records. She opined that, including the effects of substance abuse, plaintiff met the criteria for several listed mental impairments. AR 745–46. After excluding the effects of substance abuse, she believed that plaintiff's impairments did not meet any listing. AR 750–51. She testified that plaintiff's

limitations were generally less severe than as assessed by the examining doctors Huggins and Barry. See AR 754–64.

THE COMMISSIONER'S DECISION

The ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability (step one), and that plaintiff suffered from severe impairments (step two). AR 31. At step three, the ALJ found that plaintiff's impairments met those listed in Sections 12.02, 12.04, 12.08, and 12.09 of 20 C.F.R. pt. 404, subpt. P, app. 1. AR 31. Thus, including effects of substance abuse, plaintiff was disabled.

Given the medical evidence of substance abuse, the ALJ, as required by 20 C.F.R. §§ 404.1535, 416.935, performed a second sequential evaluation to determine whether plaintiff would still be disabled if he stopped using drugs and alcohol. The ALJ found that plaintiff had severe impairments (step two), but that they did not meet or equal any listed impairment (step three). AR 30. At step four, the ALJ held that plaintiff retained sufficient RFC to perform past relevant work, and that he was therefore not disabled. *Id*. The ALJ also proceeded to step five, however, where he concluded in the alternative that even if plaintiff was unable to return to his past relevant work, he could perform other jobs existing in significant numbers in the national economy. *Id*. Accordingly, the ALJ found on this alternative ground that when the effects of substance abuse were excluded, plaintiff was not disabled.

ANALYSIS

Plaintiff presents numerous assignments of error by the ALJ. He contends that the ALJ: 1) improperly found DAA to be a material contributing factor, 2) improperly rejected lay witness testimony, 3) improperly discounted plaintiff's credibility and his testimony, 4) improperly

determined plaintiff's RFC, 5) improperly determined that plaintiff could return to past relevant work, and 6) improperly adopted VE testimony.

1.      The ALJ's DAA Analysis

Plaintiff alleges two errors in the ALJ's DAA analysis.  First, he claims that the Act forbids such analysis absent an explicit finding of drug addiction or alcoholism.  Plaintiff maintains that because Dr. Clayton, whose medical opinion the ALJ credited, conceded that the record did not contain a diagnosis of drug or alcohol addiction, DAA analysis was inappropriate.

An individual is not considered disabled "if alcoholism or drug addiction would . . . be a contributing factor material" to a determination of disability.  42 U.S.C. § 423(d)(2)(C).  The SSA interprets this provision to require the ALJ to perform a materiality analysis if there is "medical evidence" of a drug or alcohol addiction.  20 C.F.R. §§ 404.1535(a), 416.935(a).  Plaintiff offers no authority for the proposition that a diagnosis of a substance abuse disorder does not suffice as medical evidence of drug and alcohol addiction.  The regulatory interpretation that medical evidence of substance abuse is a sufficient trigger for a DAA materiality analysis appears reasonable and consistent with the SSA.  Medical evidence of substance abuse disorder appears throughout the record, most notably Dr. Barry's diagnosis of a substance abuse disorder.  See AR 448–52, 750–51.  This court therefore concludes that sufficient medical evidence of plaintiff's use of drugs and alcohol existed to warrant a DAA analysis.

Second, plaintiff argues that the ALJ's materiality finding lacks evidentiary support.  Plaintiff argues that there is no evidence suggesting his impairments and limitations would

disappear if plaintiff's substance abuse ceased. This assertion misstates the ALJ's burden. The ALJ need only determine the degree of disability remaining if plaintiff were to stop all substance abuse. *Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir. 1998); 20 C.F.R. §§ 404.1535(b), 416.935(b). The ALJ did so, and substantial evidence supports his determination. Doctor Clayton specifically assessed plaintiff's limitations excluding DAA and including DAA. AR 750–51. She stated that plaintiff had marked difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace when the effects of substance abuse were considered, but that these difficulties were only moderate in the absence of substance abuse. *Id*. While she acknowledged that no period of abstinence appeared on the record to assist her in making this assessment, she noted that individuals, such as plaintiff, who have "impulse control difficulties to begin with" find these difficulties "markedly increased with substance abuse." AR 751. She also based her opinion on plaintiff's own statements that drinking makes him more aggressive and temperamental, and that he can talk to women only when he is drinking. AR 451. This evidence is sufficiently specific and substantial to support the ALJ's DAA analysis.

2.      The ALJ's Rejection of Lay Witness Testimony

Plaintiff argues that the ALJ improperly rejected the testimony of his mother and brother. Lay witness testimony may be competent evidence of how an impairment affects a claimant's ability to work. *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir.1987); 20 C.F.R. §§ 404.1513(d), 416.913(d). The ALJ may reject lay witness testimony by providing reasons germane to each witness. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). Plaintiff's mother and brother testified about plaintiff's volatility, impulsiveness, crying spells, and poor focus. *See*

AR 726–41. The ALJ credited their testimony, but held that "their observations are not accurate reflections of the claimant's functioning exclusive of drug and alcohol use." AR 29.

While not detailed, the ALJ's explanation is germane to each witness, and is supported by substantial evidence. The DAA analysis was the crux of ALJ's decision, and the ALJ rejected the lay testimony at issue because it did not assist in the DAA analysis. Although some of the observations offered by his mother and brother occurred during childhood and adolescence, these observations were of limited relevance under the facts of this case. Neither witness showed sufficient familiarity with the onset or course of plaintiff's substance abuse such that their testimony would allow meaningful comparison of plaintiff's limitations during periods of abstinence to his limitations during periods of abuse. Therefore, the ALJ did not err in rejecting this testimony on the ultimate issue of the impact of substance abuse on plaintiff's limitations.

3.      The ALJ's Rejection of Plaintiff's Testimony

Plaintiff next complains that the ALJ erred by rejecting his testimony that his impairments were disabling. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms merely because the testimony is unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (*en banc*). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be clear and convincing. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*.

Plaintiff asserts that the ALJ failed to apply the factors set forth in S.S.R. 96-7p when evaluating his credibility. These factors include the claimant's daily activities, the duration, frequency, and intensity of the claimant's symptoms, factors that precipitate and aggravate the symptoms, the type, dosage, effectiveness, and side effects of any medication the claimant may have taken to alleviate symptoms, and treatment other than medication the claimant receives or has received. S.S.R. 96-7p. The ALJ may also consider inferences drawn from the medical evidence, the consistency of a claimant's statements, both internally and with other evidence in the record, and any unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

The ALJ made numerous and specific references to the relevant factors set forth in S.S.R. 96-7p and *Smolen*. The ALJ discussed the discrepancy between plaintiff's testimony, and other evidence in the record regarding his employment in 1999 following a conviction for passing counterfeit money. Plaintiff participated in a work-release program that required him to stay employed to avoid imprisonment. Plaintiff did so for six months, but left his job immediately upon completion of the program. AR 711. Plaintiff alleges his supervisor was going to fire him for not meeting production quotas, but kept him on as a favor to allow him to complete the program and avoid jail time. No evidence supporting plaintiff's account appears in the record. Instead, the record reveals plaintiff's statements that he kept the job as long as he did only to stay out of jail. AR 446. The ALJ also noted that two of plaintiff's employers had reported that he had no problems in his performance, attendance, or ability to get along with coworkers. AR 140–42, 153–55. Plaintiff called in sick when he preferred spending time with friends rather than working, and has quit jobs when he tired of them. AR 667–68, 712. During his alleged

disability, plaintiff has intermittently worked out four or five days per week. AR 28. The ALJ made these observations, and the court agrees that they support his negative credibility inference.

The ALJ noted several other inconsistent statements by plaintiff. He gave inconsistent accounts of his alcohol use to Dr. Barry. AR 447–48, 451. He conceded at the second hearing that he was not forthright with his doctors or counselor regarding his drug use. AR 681. Plaintiff also reported to Dr. Huggins, during his claimed period of disability, that he believed he could work on a full-time basis. AR 576.

Moreover, plaintiff has been prescribed medication to help him with his depression, anxiety, and anger, and has shown improvement on these drugs when taking them. AR 458. The ALJ noted plaintiff's poor compliance with his treatment regimen. AR 28. He took Zoloft for some time, but when his prescription ran out, he simply did not refill it. AR 458. He was prescribed Depakote, took one dose, got a headache, and stopped taking it. AR 528.

The ALJ set forth all of these observations in his decision. This court will not substitute its judgment for that of the ALJ, and if the evidence can support either outcome, the court must uphold the ALJ's decision. *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001).

These observations were sufficiently specific to demonstrate that the ALJ did not arbitrarily discredit plaintiff's testimony. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The ALJ did not err in discounting plaintiff's credibility.

4.      The ALJ's Determination of Plaintiff's Residual Functional Capacity

Plaintiff's next challenges the ALJ's RFC determination. Plaintiff argues that at step four in the sequential evaluation process, the ALJ improperly determined his RFC exclusive of the effects of substance abuse. Specifically, he claims that the ALJ improperly evaluated the

medical evidence of his impairments, and that the ALJ failed to undertake the function-by-function analysis of plaintiff's work-related abilities as required by S.S.R. 96-8p. These arguments are addressed in turn.

     a.     The ALJ's evaluation of the medical evidence

A claimant's RFC is the maximum degree to which the claimant "retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(c). Such determinations must be based on all the relevant evidence in the record, including statements by medical sources as well as the claimant and others. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). As discussed above, the ALJ addressed the testimony of plaintiff, his mother, and his brother, properly giving it little weight in determining plaintiff's impairments in the absence of substance abuse. The court now turns to the ALJ's evaluation of the medical evidence.

Doctor Huggins examined plaintiff in December 2000. The doctor measured a full-scale Intelligence Quotient (IQ) of 80, in the low average range. AR 436. He diagnosed major depression (mild), oppositional defiance disorder, and learning disorder, NOS. AR 434. Doctor Huggins found plaintiff's effort and concentration to be adequate, but noted that his diagnosis of oppositional defiance disorder was tentative because it was based primarily on symptom reporting by plaintiff's mother. AR 434. In a psychiatric review technique form (PRTF), he assessed mild restrictions in plaintiff's activities of daily living (ADLs), moderate difficulties in maintaining social functioning, and marked difficulties in maintaining concentration, persistence, or pace. AR 586. He did not indicate whether plaintiff had suffered episodes of decompensation. *Id.* He concluded, "Marcus does appear to have the ability to work; however,

his frustration level is likely to be reached rather quickly due to some of the cognitive deficits that he seems to experience."  AR 435.

On the ultimate issue of plaintiff's drug and alcohol use, plaintiff reported to Dr. Huggins that he drank "hardly ever" but also that he drinks to intoxication every other month.  AR 578. Plaintiff denied using drugs.  *Id*.  The ALJ found Dr. Huggins' evaluation of plaintiff's limitations credible, but held that this evaluation did not reflect plaintiff's functioning exclusive of substance abuse because he had not fully reported the extent of his drug and alcohol use to Dr. Huggins. AR 29.

 Less than one month later, in January 2001, Dr. Barry examined plaintiff.  AR 445.  Dr. Barry administered the same test as Dr. Huggins, and assessed a full-scale IQ of 75.  AR 449. His assessment of plaintiff's impairments was more severe than Dr. Huggins'.  His impression was attention deficit hyperactivity disorder (ADHD), alcohol abuse, depressive disorder NOS, personality disorder NOS with narcissistic and antisocial features, and reading disorder.  AR 452.  Doctor Barry labeled the evaluation results as only marginally valid due to "a little bit of over-endorsement of clinical items" and poor effort during testing.  AR 448–50.  Nonetheless, Dr. Barry concluded that plaintiff's combination of impairments rendered him "unemployable." AR 451.  Doctor Barry noted that plaintiff gave shifting and inconsistent accounts of his alcohol use, that he often became extremely aggressive while drinking, and that "there are times that alcohol is a significant problem for him."  AR 447–48, 451.  The doctor stated in a PRTF that plaintiff had moderate restrictions in his ADLs, extreme difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace, and that plaintiff had suffered four or more episodes of decompensation.  AR 601.  The ALJ discounted

Dr. Barry's opinion for the same reasons he discounted Dr. Huggins' opinion—plaintiff had not been forthright in his account of his substance abuse. Finding that Dr. Barry was "unaware of the extent of [plaintiff's] substance abuse," the ALJ gave his opinion "little weight in assessing [plaintiff's] functioning exclusive of drug and alcohol use." AR 29.

Plaintiff also saw a counselor, William Carrithers, M.S.W., from February 2001 until at least the time of the second hearing. AR 565, 715. Mr. Carrithers indicated on a check-the-box form that plaintiff would not likely have substantial difficulty getting along with the public, co-workers, or supervisors on the job. AR 568. Mr. Carrithers rated plaintiff's limitations as no more than moderate in all levels of functioning. AR 29, 570. The ALJ did not credit these findings, primarily because plaintiff had denied any substance abuse to Mr. Carrithers (AR 721) and Mr. Carrithers had made no findings regarding plaintiff's substance abuse history (AR 571). Thus, the ALJ viewed the report of Mr. Carrithers similarly to the reports of Drs. Huggins and Barry, credible but not probative of the ultimate issue – plaintiff's functioning absent drug and alcohol abuse.

As a therapist, Mr. Carrithers was not an "acceptable" medical source. 20 C.F.R. §§ 404.1513(d), 416.913(d). As plaintiff correctly argues, he was nonetheless an "other source" whose opinion the ALJ was required to address. *Id.* Contrary to plaintiff's contentions, however, the ALJ clearly discussed Mr. Carrithers' findings and why he rejected them on the issue of drug and alcohol abuse. See AR 29–30. AR 29–30.

At the second hearing, Dr. Clayton testified as a non-examining medical expert. After reviewing plaintiff's records, she testified that, including the effects of substance abuse, plaintiff met the criteria for the following mental impairments listed in 20 C.F.R. pt. 404, subpt. P, app.1:

1) Section 12.02, organic mental disorders, based on ADHD; 2) Section 12.04, affective disorders, based on depression NOS; 3) rule out Section 12.08, personality disorders; and 4) Section 12.09, substance addiction disorders. AR 745–46. Including substance abuse, she assessed mild restrictions in plaintiff's ADLs, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. AR 750. After excluding substance abuse, she testified that plaintiff's limitations in these same categories would be mild, moderate, moderate, and none, respectively. AR 51.

She disagreed with the assessments of Drs. Huggins and Barry on several particulars. See AR 754–64. She noted that individuals such as plaintiff who have "impulse control difficulties to begin with" find these difficulties "markedly increased with substance abuse." AR 751. She found that, from a single examination of plaintiff, Dr. Barry had made two clearly discrepant mental residual functional capacity assessments. The record supports her observations. Compare AR 453–54 (two categories of "marked" limitations, 14 areas of no significant limitation), with AR 605–06 (12 categories of "marked" limitation, only three areas of no significant limitation). She also noted inconsistencies between the doctors' evaluations. AR 755–57.

The court concludes that the ALJ did not err in rejecting the opinions of Dr. Huggins, Dr. Barry, and Mr. Carrithers, and adopting Dr. Clayton's opinion on the ultimate issue of the impact of plaintiff's substance abuse on his functioning. While clear and convincing reasons are required to reject an examining physician's uncontradicted opinion, an ALJ need only provide specific and legitimate reasons, supported by substantial evidence, to reject an examining

physician's opinion that is contradicted by another physician. *Andrews*, 53 F.3d at 1041. An ALJ may properly disregard a medical opinion, even the opinion of an examining source, which is based on the self-reporting of a properly discredited claimant. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

Here, whether the opinions of Dr. Huggins, Dr. Barry, and Mr. Carrithers accurately reflected plaintiff's limitations excluding substance abuse depended on the extent of their knowledge of the abuse. The record shows, and plaintiff conceded, that he did not truthfully report his substance abuse to them.

Of course, the evaluations of Drs. Huggins and Barry would reflect plaintiff's functioning exclusive of substance abuse if plaintiff was then abstinent or if his substance abuse was not yet underway. So arguing, plaintiff points to his mother's assertion that plaintiff's substance abuse began after the examinations by Drs. Huggins and Barry. AR 622. Substantial evidence supports the ALJ's contrary conclusion. Doctor Clayton testified that no significant and readily identifiable period of abstinence appears on the record. AR 751–52. With respect to onset, Dr. Barry recognized substance abuse in his evaluation of plaintiff, less than a month after Dr. Huggins' evaluation. AR 448. Dr. Clayton estimated that, although the record contained disparities regarding plaintiff's substance abuse, plaintiff's substance abuse began at approximately age 17. AR 749. In addition, plaintiff's visits to Mr. Carrithers, beginning in February 2001, clearly overlapped with periods of abuse. AR 719–20. See AR 681. Further, Dr. Clayton's was the only medical opinion based on a review of all evidence in the record regarding plaintiff's substance abuse, and she explained in sufficient detail the basis for her disagreement with the other doctors' conclusions. On the facts of this case, this was a specific

and legitimate basis, supported by substantial evidence, on which to reject their opinions in favor of Dr. Clayton's views. *Andrews*, 53 F.3d at 1041.

        b.      The ALJ's compliance with S.S.R. 96-8p

Plaintiff's next argument is that the ALJ failed to comply with S.S.R. 96-8p, which requires that RFC assessments "identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis," including physical, mental, and other abilities affected by his or her impairment. S.S.R. 96-8p; *see also* 20 C.F.R. §§ 404.1545(b)–(d), 416.945(b)–(d). The ALJ discussed plaintiff's various mental impairments at length. Addressing plaintiff's minor physical impairments, frequent urination and asthma, the ALJ noted that each was adequately controlled by medication, and that neither caused plaintiff significant impairment. AR 28, 706, 709–10. The court concludes that the ALJ's determination of plaintiff's RFC complies with S.S.R. 96-8p.

5.      The ALJ's Conclusion That Plaintiff Could Perform Past Relevant Work

Plaintiff next challenges the ALJ's finding that plaintiff could perform his past relevant work (PRW). The ALJ concluded that plaintiff could return to past work "as a lot attendant, warehouse worker and small products assembler as performed by the claimant." AR 30. The ALJ based this conclusion on his RFC determination that plaintiff was limited to "simple, routine, repetitive work with no public interaction and only occasional interaction with co-workers. He should not work around hazards." *Id*.

The ALJ's conclusions that plaintiff could return to his jobs as lot attendant and warehouse worker appear either unsupported by substantial evidence or inconsistent with the ALJ's own RFC determination. Plaintiff's work as lot attendant involved significant public

interaction, and his warehouse work exposed plaintiff to some hazards. *See* AR 767–70 (plaintiff's testimony). The ALJ's RFC assessment precluded such work. Further, the ALJ made insufficient findings about plaintiff's small parts assembly job to determine whether he could return to that employment. *See* S.S.R. 82-62 (requiring specific discussion of claimant's RFC, the functional demands of past work, and the relation between the two). Thus, the ALJ's past relevant work determination at step four was erroneous. However, as discussed below, because the ALJ determined that plaintiff could perform other work in the national economy, this error was harmless.

6.      The ALJ's Alternative Findings at Step Five

The ALJ also concluded that even if plaintiff could not return to his PRW, he could make a successful vocational adjustment to other jobs existing in significant numbers in the national economy. AR 30. Based on the testimony of a VE, the ALJ concluded that plaintiff could perform work as a janitor, room cleaner, and hand packager. *Id*. Plaintiff challenges the ALJ's step five findings on two grounds.

Plaintiff alleges first that the ALJ's hypothetical question to the VE did not include all of plaintiff's impairments. At step five, the Commissioner may satisfy the SSA burden of showing that the claimant can do other work which exists in the national economy by eliciting the testimony of a VE by posing hypothetical questions. *Andrews*, 53 F.3d at 1043. The VE's testimony will have evidentiary value only if the hypothetical questions sets forth all the claimant's limitations. *Id*. The ALJ may accept or reject restrictions in a hypothetical question that are not supported by substantial evidence. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001).

The ALJ's first hypothetical question to the VE set forth the same functional limitations the ALJ made in his RFC finding: simple, routine, repetitive work, only occasional interaction with co-workers and no interaction with the public, and no exposure to hazards.  AR 769.  The VE testified that these restriction would permit work as a janitor, room cleaner, and hand packager.  The ALJ adopted this testimony.  AR 30, 772.  The ALJ declined to adopt testimony elicited by a second hypothetical question, in which the worker had the limitations endorsed by Dr. Barry after constructing plaintiff's MRFC assessment.  These limitations included "marked" restrictions in the following abilities: understanding, remembering, and carrying out detailed instructions, maintaining attention and concentration for extended periods, performing activities within a schedule, maintaining regular attendance and being punctual within customary tolerances, sustaining an ordinary routine without special supervision, getting along with peers, and maintaining socially appropriate behavior.  AR 605–06, 774.  The VE testified that such limitations would preclude all work.

As discussed earlier, because substantial evidence supported the ALJ's rejection of Dr. Barry's opinion, the ALJ properly rejected the testimony pertaining to the second hypothetical question.  The hypothetical-testimony adopted by the ALJ did not need to mention asthma or urinary problems because, as discussed above, the ALJ properly found that these impairments had virtually no effect on plaintiff's functioning when properly controlled by medication.  Therefore, the hypothetical question relied upon by the ALJ was properly limited to those impairments supported by substantial evidence in the record.  *Osenbrock*, 240 F.3d at 1165.

Plaintiff's second challenge regarding the ALJ's step five analysis contends that the VE's testimony about the number of jobs available as a janitor, room cleaner, and hand packager

lacked an adequate foundation and should be disregarded. The VE identified these jobs from the

Department of Labor's Dictionary of Occupational Titles (DOT), specified their appropriate

DOT codes, and estimated how many of these jobs existed in Oregon and in the national

economy.

Plaintiff relies upon the analysis found in *Daubert v. Merrel Dow Pharmaceuticals, Inc.*,

509 U.S. 579 (1993) for his challenge. *Daubert* concerned the prerequisites for admissibility of

scientific evidence in federal court under Rule 702 of the Federal Rules of Evidence. Under

Rule 702, a district court must ensure that a purported expert's opinion rests on a reliable

foundation and is relevant. *Id.* at 597.

Plaintiff contends the VE's testimony regarding the number of jobs in each occupation is

inadmissible because the ALJ did not ensure that the testimony had a reliable foundation before

adopting it.

This court has consistently rejected this argument. Rule 702 and the *Daubert* analysis are

inapplicable to Social Security disability hearings before an ALJ. 42 U.S.C. § 405(b)(1). An

ALJ "may receive evidence at the hearing even though the evidence would not be admissible in

court under the rules of evidence used by the court." 20 C.F.R. §§ 404.950(c), 416.1450(c).

If the VE provides vocational testimony that conflicts with information in the DOT, the

ALJ must obtain an explanation for the conflict and discuss how the conflict was resolved.

S.S.R. 00-4p. Here, the ALJ was not required to resolve any conflict. Therefore, the ALJ did

not err in failing to question the VE about her sources, or in adopting her testimony.

CONCLUSION

As recognized above, this court must affirm the Commissioner's decision when it is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole.  The Commissioner's denial of benefits must be upheld even when the evidence is susceptible to more than one rational interpretation, so long as one interpretation supports the Commissioner's decision.  For the foregoing reasons, this court concludes that the Commissioner's decision is based on correct legal standards and is supported by substantial evidence in the record.  The Commissioner's denial of plaintiff Marcus Vollans' application for SSI and DIB, therefore, is AFFIRMED.  This matter is DISMISSED.

IT IS SO ORDERED.

DATED this __31___ day of August, 2005.


___/s/Ancer L.  Haggerty_____
                Ancer L. Haggerty
            United States District Judge