UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARCUS VOLLANS,

              Plaintiff,                                 Civil No.  04-823-HA

              v.                                  OPINION AND ORDER

JO ANNE B. BARNHART,
Commissioner of Social Security,


              Defendant.
_____

HAGGERTY, Chief Judge:

      On February 1, 2006, this action was remanded to the Commissioner of the Social

Security Administration (SSA) for consideration of new evidence pursuant to sentence six of 42

1  -- OPINION AND ORDER

U.S.C. § 405(g). This court retained jurisdiction over this matter while further administrative

proceedings were completed. The SSA concluded once again that plaintiff is not entitled to

benefits. Plaintiff appeals, and a new transcript and administrative decision have been filed with

the court.

## **BACKGROUND**

The factual background of this action and the applicable legal standards have been

reviewed previously, and need only brief summary here. Plaintiff first applied for Disability

Insurance Benefits (DIB) and Supplemental Security Income benefits (SSI) on June 8, 2000.

These applications were denied initially and after reconsideration, and plaintiff requested a

hearing to review that denial. An Administrative Law Judge (ALJ) concluded, after two

hearings, that plaintiff did not qualify for benefits. This ruling was issued on August 30, 2002.

Plaintiff appealed the ALJ's decision to the SSA's Appeals Council. Concurrently, on September

16, 2002, plaintiff also independently re-applied for DIB.

The Appeals Council declined to grant agency review of the determination regarding the

initial applications, and plaintiff appealed that decision. In early 2006, as noted above, this court

evaluated that appeal and remanded for further proceedings to consider new medical evidence,

including plaintiff's diagnosis that he suffered from Klinefelter's Syndrome.

Meanwhile, plaintiff's re-application for DIB also proceeded. This re-application was

denied initially and after reconsideration. Plaintiff requested a hearing, which was held on

March 3, 2005. Plaintiff's hearing was held before a different ALJ, who issued a decision on

October 28, 2005, that concluded that plaintiff was not disabled.

Plaintiff appealed that ruling regarding his re-application for DIB to the Appeals Council. That appeal was made to the Appeals Council near the time that this court's remand of plaintiff's initial applications was also presented.

On April 5, 2006, the Appeals Council consolidated the remand from this court with plaintiff's appeal of the rejection of his re-application for DIB.  On June 23, 2006, the Council affirmed the agency's rejection of plaintiff's re-application for DIB and concluded that the rejection also independently satisfied the requirements of this court's Order of Remand.  Tr. of Admin. R. (hereinafter, Tr.) 781-84.  In sum, the Appeals Council denied all of plaintiff's applications.

This unusual combination of agency decisions has resulted in a final determination that plaintiff is not entitled to benefits.  Plaintiff seeks judicial review of these matters.  The review has been undertaken.  For the following reasons, this action is remanded for the calculation and immediate award of benefits.

## <u>ANALYSIS</u>

### 1.    **Procedural inconsistencies**

This court notes at the outset of its analysis that the Appeals Council's adoption of two distinct agency decisions includes a specific finding that there is "no basis to change any of the findings made by the Administrative Law Judges."  Tr. 782.  This ignores the existence of irreconcilable conflicts in these decisions.

As part of the agency's analysis, an ALJ must determine whether a claimant's impairment "meets or equals" one or more of the impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1.  If so, the claimant is considered disabled; if not, the Commissioner proceeds to determines whether

the claimant is able to perform work that he or she has done in the past.  20 C.F.R. §§

404.1520(a)(4)(iii), 416.920(a)(4)(iii).  This requires the ALJ to examine the claimant's residual

functional capacity (RFC) and the physical and mental demands of the claimant's past relevant

work.  *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002).

     Here, one of the ALJs concluded that plaintiff's conditions met the requirements of the

listings and was therefore construed as disabled.  Tr. 812, 815.[1]  The other ALJ concluded that

plaintiff's conditions did not meet or equal a listed impairment.  Tr. 799A.  Relatedly, the ALJs'

rulings differ regarding the possible impact of plaintiff's drug and alcohol use.  One ALJ

determined that plaintiff's impairments no longer met the criteria of a listed impairment after

plaintiff's drug and alcohol use was considered.  Tr. 812.  This analysis was absent in the other

ALJ's findings.  Tr. 797-805.

     Although troubling, the Appeals Council's adoption of two inconsistent agency rulings

without recognizing a need to change inconsistent findings presents no bar to the determination

that plaintiff is entitled to benefits.  Because errors pertaining to the insufficient assessments of

medical opinions compel this court to credit those assessments and to reverse and remand with

instructions to award benefits, the unusual procedural history of this action is rendered less

significant.  *See Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).  However, even if a remand

for the calculation of benefits was deemed inappropriate, remand of these matters for further

proceedings to resolve the inconsistent findings would be required.

---

[1]It is true that this ALJ went on to conclude that absent the effects of plaintiff's drug and
alcohol abuse, plaintiff's conditions did not meet or equal a listed impairment.  Tr. 815; *see also
Bustamante v. Massanari*, 262 F.3d 949 (9th Cir. 2001).  However, this ultimate conclusion fails
to negate the fact that the ALJs' decisions conflict with one another on the issue of the severity of
plaintiff's impairments.

2.        **Medical opinions**

Plaintiff's treating physician, Dr. Randall Blome, diagnosed plaintiff as suffering from depression.  Tr. 1190, 1191.  Relatedly, Dr. Blome has opined that plaintiff is unemployable because of  severe depression.  Tr. 1187, 1190.  The doctor stated explicitly that "I have been his physician for several years now and it is clear to me that [plaintiff] is unable to hold a normal job.  His mental functioning and mood disorder limit this person severely."  Tr. 1187.

Defendant disregards this medical opinion, asserting that "[t]he  fact that a physician believed Plaintiff could not 'hold a normal job' is not competent evidence and does not establish the physician's opinion as fact."  Deft.'s Brief at 9.

While it is, of course, obvious that a physician's belief fails to "establish" the doctor's "opinion as fact," an ALJ must, nevertheless, provide clear and convincing reasons for rejecting uncontroverted expert opinions of a treating physician, and must provide specific, legitimate reasons for rejecting a treating physician's controverted expert opinions.  *Lester*, 81 F.3d at 830-32; *see also Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) (clear and convincing reasons must be provided to support rejection of a treating physician's ultimate conclusions).

Certainly, an opinion of the treating physician is not viewed as conclusive as to either a claimant's condition or the ultimate issue of disability.  *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002) (citations omitted).  "Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability."  *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989)).  An ALJ need not accept a treating physician's opinion that is conclusory, brief, and

unsupported by clinical findings. *Tonapetyan*, 242 F.3d at 1149 (citing *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)).

However, an ALJ must give weight not only to the treating physician's clinical findings and interpretation of test results, but also to the doctor's subjective judgments. *Lester*, 81 F.3d at 832-33 (citing *Embrey*, 849 F.2d at 422).

The proffered reasons for rejecting the opinions of Dr. Blome are neither clear and convincing nor specific and legitimate, and therefore fail under either test. One ALJ noted that Dr. Blome "is not a psychiatrist or psychologist and has performed no psychological or cognitive testing of the claimant. He is not a vocational expert and his opinion regarding vocational matters is not entitled to weight. His opinion is given little weight." Tr. 801. No reference to Dr. Blome is presented in the other ALJ's ruling. Tr. 809-17.

It is beyond serious dispute that a primary care physician may treat and give an opinion on a mental impairment even if that primary care physician lacks certification in psychiatry. *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citations omitted) (it is well established that most of the psychiatric disorders in America are identified and treated by primary care physicians, who can offer competent psychiatric evidence based upon clinical observations). The rejection of Dr. Blome's opinions on grounds that the doctor was not a psychiatrist and did not administer specific testing to plaintiff was improper because Dr. Blome's decade-long personal and clinical observations of plaintiff's depression and its impact upon plaintiff were overlooked. As plaintiff's primary treating physician, Dr. Blome was in a unique position to offer valuable evaluations of the effects of plaintiff's depression. "Because treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an

individual, their opinions are given greater weight than the opinions of other physicians."
*Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

Similarly, the ALJs failed to give legitimate reasons to reject opinions from Dr. Steven Barry, Ph.D. Doctor Barry evaluated plaintiff in 2001 and 2005. Tr. 445-52; 1259-62; 1265-88. In 2001 Dr. Barry assessed that plaintiff suffered from a "very poor perseverance of effort," was in the "bottom 1% of individuals" for reading pace, had significant problems with concentration and memory," "has **very** limited resources in dealing psychological stressors" (emphasis in original), "is unemployable due to a combination of significant Axis I and Axis II problems," and suffers from a disability that will "persist well beyond the next 12 months." Tr. 448-51.

In 2005 Dr. Barry assessed that plaintiff had severe impairments in the abilities to complete a normal workweek without interruptions from psychological symptoms; to maintain attention and concentration for extended periods; to work with others without being distracted by them; and to sustain an ordinary routine without special supervision. Tr. 1259-60.

After his second evaluation Dr. Barry opined that, although plaintiff had improved, he was not employable:

> I continue to believe [that plaintiff is] disabled and not employable
> due to Axis I and II problems. I can't, however, state with any
> certainty what contribution there might be from alcohol and drugs.
> Given the longevity, chronicity, and severity of his problems, I
> think even if he were objectively and demonstrably chemical free
> he'd continue to be disabled. He certainly has improved since
> 2001; I suspect his medications really help. However, his
> Personality Disorder and [Attention Deficit Hyperactivity
> Disorder, hereinafter ADHD] combine, still, to make me believe he
> can't find and keep employment.

Tr. 1273.

7  -- OPINION AND ORDER

One ALJ concluded that Dr. Barry's opinion "is not given much weight" because he "is not a treating source" and "had only a limited ability to evaluate the claimant." Tr. 802. This was improper.

The SSA's implementing regulations distinguish among the opinions of three types of physicians: 1) those who treat the claimant; 2) those who examine, but do not treat; and 3) those who neither examine nor treat. 20 C.F.R. § 404.1527(d); *see also Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001); *Lester*, 81 F.3d at 830.

Generally, a treating physician's opinion may carry more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than a reviewing physician's conclusions. *Holohan*, 246 F.3d at 1202; *Lester*, 81 F.3d at 830.

Under Social Security regulations, if a treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, that opinion is given controlling weight. *Holohan*, 246 F.3d at 1202; 20 C.F.R. § 404.1527(d)(2). An ALJ may rely on the medical opinion of a non-treating doctor instead of the contrary opinion of a treating doctor only if the ALJ provides "specific and legitimate" reasons for doing so that are supported by substantial evidence in the record. *Id*. If a treating physician's opinion on the issue of disability is controverted, the ALJ still must provide "specific and legitimate" reasons before rejecting the treating physician's opinion. *Id*.

Throughout these standards regarding the distinctions made between medical opinions, there is no basis for discrediting a doctor's conclusions as entitled to "not much weight" because that doctor was an examining physician and not a treating physician. Similarly, there is no basis

for construing a physician's ability to evaluate a claimant as "limited" solely because the physician is an examining physician.

This ALJ also devalued Dr. Barry's opinions because his views were "not entirely consistent with the findings on examination," Dr. Barry was allegedly "vague concerning whether the claimant's drug and alcohol use is material," and Dr. Barry allegedly failed to evaluate plaintiff's credibility adequately.  Tr. 802.

It is appropriate to discount medical opinions to the extent that the opinions are based on a claimant's self-reporting.  *Tonapetyan*, 242 F.3d at 1149.  However, nothing in the record suggests that Dr. Barry's expert opinion of plaintiff's impairments was based exclusively or even largely upon plaintiff's self-reporting.  To the contrary, the evidence presented establishes that Dr. Barry grounded his opinions upon the scrutiny of objective healthcare records, Tr. 1267-68, and thorough testing and evaluation.  Tr. 1269-73.  Moreover, concerns about plaintiff's "lack of effort" was addressed by Dr. Barry as a possible symptom of plaintiff's mental illness itself.  Tr. 1273 (observation that plaintiff "seems to lack the resources to put into action any steps towards any goals").  Given this view, Dr. Barry's general observations about plaintiff's "lack of effort" support the doctor's opinions regarding plaintiff's disabilities and do not discredit plaintiff or Dr. Barry's medical opinions.  Similarly, Dr. Barry's conclusion that "even if he were objectively and demonstrably chemical free he'd continue to be disabled" cannot be reasonably deemed "vague." Tr. 1273.

The ALJ also discredited Dr. Barry's opinions because the functional limitations he found were inconsistent with plaintiff's "treatment records and . . . daily activities."  Tr. 799A. After examining the record in its entirety, this court concludes that evidence that plaintiff can perform

certain activities fails to diminish Dr. Barry's expert opinion that plaintiff suffers from "marked" limitations.

Doctor Barry's opinions from his first evaluation were also discredited by the other ALJ on grounds that plaintiff failed to disclose his substance abuse. Tr. 812 ("However, the claimant did not report his drug use to Dr. Barry"); Tr. 814 (plaintiff "had not reported any drug use to Dr. Barry" and therefore the doctor's opinion "is given little weight in assessing the claimant's functioning exclusive of drug and alcohol use").

This is a overly restrictive reading of Dr. Barry's 2001 evaluation. In fact, Dr. Barry commented on plaintiff's reports of using alcohol in his junior year of high school, and plaintiff's denial that his drinking "or other drug use" was a contributing factor to his relationship problems. Tr. 447. Doctor Barry also included plaintiff's descriptions of his drinking binges. Tr. 448. Doctor concluded by expressing a hope that plaintiff be "mandated into mental health treatment and be required to go through a comprehensive alcohol and drug evaluation and comply with any treatment recommendations." Tr. 451. In light of these frank appraisals, the ALJ's rationale for giving Dr. Barry's 2001 opinions "little weight" is insufficient.

Given these errors regarding the evaluation of these medical opinions, this court need not reach plaintiff's other arguments regarding the consideration of lay testimony presented, plaintiff's "stress intolerance," and plaintiff's employment history. Instead, the medical opinions are credited and this action must be remanded.

### 3.    Scope of remand

When the Commissioner provides inadequate reasons for rejecting the opinions of either treating or examining physicians, those opinions are generally credited as true as a matter of law.

*Widmark v. Barnhart*, 454 F.3d 1063, 1069 (9th Cir. 2006) (citations omitted)*; see also Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004).  Based upon the administrative record before the court, there is no doubt that crediting the opinions of Drs. Blome and Barry requires a finding that plaintiff is disabled.

When it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence in question were credited, additional proceedings are unnecessary to determine plaintiff's entitlement to benefits.  *See Smolen*, 80 F.3d at 1292 (remanding for an award of benefits is appropriate where the record is fully developed, and further proceedings "would serve no useful purpose"); *see also Lester*, 81 F.3d at 834 (if evidence that was improperly rejected demonstrates that claimant is disabled, court should remand for payment of benefits).  Permitting the Commissioner a further opportunity to amend findings to comport with the denial of disability benefits is not in the interests of justice.  *See Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989) (if remand for further proceedings would only delay the receipt of benefits, judgment for the claimant is appropriate).

The record presented establishes that plaintiff cannot perform any substantial gainful work that exists in the national economy, and the case need not be returned to the ALJ to make yet more RFC determinations.  *Benecke*, 379 F.3d at 595.  "Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication."  *Id*. (citations omitted).  As the *Benecke* court summed up:

> Remanding a disability claim for further proceedings can delay much needed income for claimants who are unable to work and are entitled to benefits, often subjecting them to tremendous financial difficulties while awaiting the outcome of their appeals and proceedings on remand.  Requiring remand for further proceedings any time the vocational expert did not answer a

11  -- OPINION AND ORDER

> hypothetical question addressing the precise limitations established
> by improperly discredited testimony would contribute to waste and
> delay and would provide no incentive to the ALJ to fulfill [his or]
> her obligation to develop the record.

*Benecke*, 379 F.3d at 595 (citations and internal quotations omitted).

## CONCLUSION

Given the foregoing, there are no outstanding issues in this matter to be resolved. The court concludes that the record is fully developed and that further administrative proceedings would serve no useful purpose. Under the applicable standards, after giving the evidence in the record the effect required by law, plaintiff is unable to engage in any substantial gainful activity by reason of his impairments, and he is disabled. Accordingly, the final decisions of the Commissioner are reversed, and this case is remanded to the Commissioner for the proper calculation and award of DIB and SSI benefits to plaintiff Marcus Vollans.

IT IS SO ORDERED.

DATED this __26th__ day of July, 2007.


/s/ Ancer L Haggerty
ANCER L. HAGGERTY
United States District Judge


12  -- OPINION AND ORDER